Jasen, J. (concurring).
I concur in the majority opinion but would add the following.
*257 I agree with Judge Wachtler that successful analysis of difficult Fourth Amendment problems does not hinge on one’s ability to neatly categorize a particular fact pattern as involving, for example, "hot pursuit”, or a "search incident to an arrest”. Unfortunately, the facts in search and seizure cases do not always fit snugly into well-defined categories. This is such a case, as it involves elements of at least the two categories which have come to be known as "hot pursuit” and "search incident to an arrest”. When the officers began searching the house of defendant’s mother, defendant, evidently overhearing the conversations on the first floor, fled, still within the house, seeking a hiding place. To that extent the officers were in "hot pursuit”. Moments later it became clear that defendant was hiding in the attic, with his only escape through the trapdoor which the officers were guarding. Having found the defendant, .the officers were really no longer in "hot pursuit”. But since defendant would not be arrested yet for half an hour, one might be equally concerned about terming the officers’ actions then as being "incident to an arrest”.
Rather than struggle with such categories, I focus on the officers’ conduct and analyze the case on that basis. The officers, who had secured a valid arrest warrant, possessed reliable information not only that defendant was in the house, but that he was armed. When they did not immediately find him, they were entitled to protect themselves and also hinder his escape by searching for, and seizing, weapons that an escaping defendant might be likely to use against his captors. This concern justifies Detective Rizzo’s search of the bedroom closet and the chest of drawers therein, and the seizure of the shotgun and shells from the chest.
Once the officers discovered defendant’s presence in the attic, his arrest without injury to the officers became their paramount concern. Unobstructed access to the trapdoor in the closet became important. To provide such access, the clothes hanging in the closet had to be removed. In so doing, Officer Catalano felt a hard object in the pocket of a sports jacket he was removing. Because this hard object might be a weapon, the officer would have been foolish to ignore its presence. Nothing turns on whether we say that the officers were still in "hot pursuit” of defendant, or that this object might be in defendant’s potential "grab area” once he was arrested and thus could be seized as "incident to an arrest”. *258 The simple fact is that the presence of the weapon posed a potential danger to the officers and could be legally seized for their safety and protection.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur with Judge Wachtler; Judge Jasen concurs in a separate opinion in which Chief Judge Breitel and Judge Jones also concur.
Order affirmed.